No. 22571.

Charles R. Eatchel, William E. Eatchel and Mrs. William E. Eatchel *v.* Erin Kay Lanphere and Kelli Ann Lanphere, by their father and next friend James A. Lanphere.

(463 P.2d 457)

Decided January 12, 1970.

BRADLEY, CAMPBELL, CARNEY & JOHNSON, LEO N. BRADLEY, for plaintiffs in error.

GRANT, SHAFROTH, TOLL & McHENDRIE, DONALD M. BURKHARDT, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

PLAINTIFFS in error, Charles R. Eatchel and William E. Eatchel, bring writ of error here from an order of the Denver District Court adjudging them in contempt of court and assessing attorney's fees against them.

James A. Lanphere, the former husband of Mrs. Rose Ann Parker, filed petitions for writs of habeas corpus in the names of Erin Kay and Kelli Ann Lanphere who are minor children born to James Lanphere and Mrs. Parker during their marriage. Mrs. Parker claimed custody of the children pursuant to a decree of a Texas district court,

and they resided with her in Texas. The father alleged that custody was rightfully in him by virtue of a decree of a district court in New Mexico. At the time the petition was filed, Mrs. Parker and the two children were visiting with her parents, Charles and Wilma Eatchel, in Colorado.

Writs of habeas corpus were issued for the production of Erin and Kelli Lanphere and were served upon William Eatchel (a brother of Mrs. Parker) and upon his wife. William informed Charles Eatchel that he had been served with certain papers regarding his sister's children. Charles Eatchel conferred with his lawyer and discussed the matter with his daughter, Mrs. Parker. As a result Mrs. Parker left Colorado for Texas with the two children without being served with the writ. Subsequent to Mrs. Parker's departure from Colorado, the writs were served on Charles Eatchel.

On the return day for the writs, William and Charles Eatchel (hereinafter referred to as the respondents or by name) appeared in court without the children. After conducting a hearing on why the children were not before the court, the district court judge ordered the respondents to appear and show cause why they should not be held in contempt of court. A citation of contempt and an order were issued to the two respondents, and after a hearing, both of them were adjudged to be in contempt of court. A subsequent motion for allowance of attorney's fees filed by Mr. Lanphere was granted by the Court.

We find it necessary to discuss only one of the allegations of error put forth by the respondents. They allege that the evidence at the hearing to show cause is insufficient as a matter of law to find them in contempt of court. We agree and reverse the judgment of the district court.

The citation for contempt, as amended, ordered the respondents to appear before the court and show cause why they should not be punished for contempt for neglect and refusal to comply with the order, which was to produce the children whom it was said were unlawfully

detained in the respondents' custody. On the basis of this charge, the trial judge decided that both of the respondents were in contempt for their failure to "adhere to the order heretofore properly entered by the judge of the district court."

 The accused can be convicted of no contempt other than that charged in the citation. This Court has recognized that the citation for contempt plays a very important role in enabling the person charged to understandingly shape his course and prepare his defense. *Shapiro v. Shapiro,* 115 Colo. 501, 175 P.2d 387. It is the opinion of this Court that there is insufficient evidence, as a matter of law, in the record of the hearing to support the conclusion of the judge that the respondents had neglected or refused to comply with the writs of habeas corpus, which was the contempt with which they were charged. See *Decatur v. Young,* 92 N.J. Eq. 635, 114 A. 806.

It is not argued by counsel on either side that Charles or William Eatchel had actual custody of the two children involved in the writs of habeas corpus. The evidence reveals that the children were continuously under the control and in the custody of their mother, Mrs. Parker. Instead of finding that the respondents had actual custody of the children, the court looked to the care that Charles Eatchel had lavished on the children and the relationship he shared with his daughter. Under the circumstances, the court found that obedience to the order of the court would require the father "to put his foot down and demand that they remain until this matter could have been disposed of properly in these courts."

 We do not agree that the respondents were under an obligation to proceed as the district judge directed. The mother, who had not been served in the Colorado proceeding, left the State of Colorado with the two children in her custody. The respondents could not produce the children in court against the wishes of the mother, and there was evidence that Mrs. Parker would have refused to comply if her father and brother had

done as the court felt they should have done. The district court judge noted before fixing a penalty that there was evidence that Charles Eatchel flew to Texas in a vain attempt to prevail upon his daughter to return with the children to Colorado.

The case of *Brown v. Cook*, 123 Utah 505, 260 P.2d 544, cited by the defendant in error, involved a situation where the person in contempt of court had actual custody of the child. Under the circumstances in *Brown*, the Supreme Court of Utah correctly held that the person having custody of the child was required by the writ of habeas corpus to produce the child after having been served with the writ; furthermore, that he failed to obey the order and was therefore in contempt of court when he permitted the child's father to remove the child from the state without offering appropriate resistance. Those are not the facts in the present case.

█ Nor can it be said that the conviction of contempt was proper on the grounds that the Eatchels interfered with the execution of legal process or the administration of justice. Such acts of interference — if in truth they were actually acts of interference — constituted contempt outside the presence of the court, *District Attorney v. District Court*, 150 Colo. 136, 371 P.2d 271. To obtain jurisdiction to punish for contempt based on interference with the execution of legal process or the administration of justice in this case it was therefore necessary for the court to issue a citation commanding the respondents to show cause why they should not be held in contempt for interfering with the execution of legal process or obstructing the administration of justice. This was not done here, and therefore the court had no power to punish for contempt based on the grounds of interference and obstruction.

█ Since the judgment of contempt cannot be sustained, and since by virtue of Rule 107 (d) an order for attorney's fees is an adjunct of a finding of guilty of con-

tempt, the award of attorney's fees by the trial court must also be set aside.

The judgment is reversed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE HODGES and MR. JUSTICE GROVES concur.